CLARK RAND *vs.* LEROY Z. CUTLER & another.

Berkshire.　November 12, 1891. — January 14, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Levy of Execution — Notice — Redemption of Mortgage — Subrogation.*

A levy of execution upon real estate is invalid if the officer's return fails to show the time of giving the first notice of the sale made pursuant to the Pub. Sts. c. 172, §§ 29, 45.

On a bill in equity to redeem land from a mortgage, it appeared that the plaintiff and his son's wife mortgaged different lots to a bank as security for a note to the bank signed by the plaintiff and the son to secure the son's debt. Several years later the son's wife gave a second mortgage on her lot to a third person, and still later a third mortgage to the defendants, after which the defendants took assignments of the two mortgages to the bank, and of the second mortgage given by the son's wife. The papers did not disclose the fact that the plaintiff was a surety, and that the son and his wife had agreed to pay the note and to indemnify him. The defendants refused to render an account of the amount due on the first mortgage given by the son's wife, when requested by the plaintiff. *Held*, that the plaintiff was not entitled by way of subrogation to the benefit of the first mortgage given by the son's wife to the bank. *Held, also*, that costs were properly given in the discretion of the court to the plaintiff.

BILL IN EQUITY, filed in the Superior Court, to redeem land from a mortgage. The Superior Court entered a decree that the plaintiff was entitled to redeem, and to be subrogated to the defendants' rights in a certain other mortgage, with costs to the plaintiff; and the defendants appealed to this court. The facts, so far as material to the point decided, appear in the opinion.

*M. E. Couch & A. Potter*, for the plaintiff.

*G. Wells & W. W. McClench*, (*C. M. Barnes* with them,) for the defendants.

ALLEN, J. This is a bill in equity to redeem land from a mortgage. The only ground upon which the defendants contest the plaintiff's right to redeem is that his title was devested by a sale on execution against him. The plaintiff contends that the levy and sale were invalid, and assigns as one of his reasons that the sheriff's return does not show the dates of either the personal notice or the published notice of the sale.

By Pub. Sts. c. 172, § 29, when land is to be sold on execution, " the officer shall give notice in writing of the time and place of sale to the debtor, if found within his precinct, and shall also cause notifications thereof to be posted up in some public place in the city or town where the land lies, and also in two adjoining cities or towns, if there are so many in the county; all which notices shall be given thirty days at least before the sale." There is a further provision for an advertisement in a newspaper. By § 45 of the same chapter, the levy, " in case of a sale, shall be considered as made at the time of the first notice of such sale, whether given to the debtor, or by posting up a notification thereof in a city or town, or by publishing the same as before prescribed."

Since the levy takes effect as of the time of the first notice, it becomes material that the officer's return should show the date of such notice. The levy itself must be made before the return day of the execution, but the subsequent proceedings may be afterwards. Pub. Sts. c. 172, § 45. *Slater* v. *Lamb*, 150 Mass. 239. The execution upon which the officer assumed to act was dated July 24, 1878. It was returnable in sixty days from date. Pub. Sts. c. 171, § 22. It would therefore run out on September 22. Since the levy is to be considered as made at the time of the first notice, it was necessary to give this notice as early

as September 22. All that the return shows is that it was given thirty days before the time appointed for said sale. That time was November 9. Therefore all that the return shows is that the notice was given as early as October 10, and, so far as the return shows, it might have been given on any day between September 22 and October 10, and if so given it would be after the return day of the execution. An officer's return of the levy of an execution upon real estate must show that all the requisites of the statutes have been complied with, in order that a good title may appear of record; and the facts cannot be supplied by extrinsic evidence. The importance of this requirement has often been dwelt upon. *Wellington* v. *Gale*, 13 Mass. 483, 488. *Williams* v. *Amory*, 14 Mass. 20, 29. *Litchfield* v. *Cudworth*, 15 Pick. 23, 28. *Wolcott* v. *Ely*, 2 Allen, 338. *Parker* v. *Abbott*, 130 Mass. 25, 28. *Welsh* v. *Macomber*, 130 Mass. 28, in note. The return was defective in respect to the time of giving the first notice, and no motion was made to amend it. It therefore follows, that it does not appear that the sale on the execution was valid, or that the plaintiff's title was devested.

The plaintiff also contends that, upon redemption of his mortgage, he is entitled to be subrogated to the defendants' rights under another mortgage given by Caroline F. Rand to secure the same debt. It appears that Lucius C. Rand, who was the husband of Caroline and a son of the plaintiff, was a member of a firm which owed $900 to the North Adams Savings Bank. In part payment of this debt a new note for $800 was given to the savings bank, signed by Lucius C. Rand and Clark Rand. In fact Clark Rand (the plaintiff) was a surety, though this did not appear on the face of the note. To secure this note the plaintiff gave to the savings bank a mortgage upon his lot of land; and on the same day Caroline also gave to the savings bank a mortgage upon her lot, though she did not sign the note. So far as the facts were known to the savings bank, each mortgagor was furnishing security for the debt of Lucius C. Rand, and each would stand in respect to such security in the relation of surety for him.

In addition to this, however, it seems that Lucius C. Rand and his wife agreed to pay said note and to indemnify the plaintiff; but there was nothing to show that the savings bank was aware of this agreement.

Now, if while this state of things continued, and before any new rights had been gained by anybody, the plaintiff had paid the debt to the savings bank, and made a claim to be subrogated to its rights under the mortgage from Caroline for his protection, it would have presented the question whether he could maintain this claim under the decision in *Bowditch* v. *Green*, 3 Met. 360. In that case one of two co-sureties on a note delivered to the payee, as collateral, another note running to himself. The other co-surety paid a certain sum, being the balance due on the original note, and received from the payee the note held by the latter as collateral, and afterwards brought an action upon it. It was held that the payee of the original note had no right so to transfer the note held by him as collateral, and that the surety who made the payment had no right to hold it. This decision was at law, and was made when the equity jurisdiction in Massachusetts was very limited, and whether it would now, under such circumstances, be deemed to cut off an equitable right to subrogation need not be considered. See Sheldon on Subrogation, §§ 137–140, and cases cited.

But in the present case the state of things has not remained the same. Several years after the giving of the mortgages to the savings bank, Caroline F. Rand executed another mortgage upon her lot to one Davis, and still later another mortgage to the defendants; and at a still later date the defendants took assignments of the two mortgages to the savings bank, and also of the mortgage to Davis. The title to the plaintiff's lot under the sheriff's deed had also come to her, and this lot also was included in her mortgage to Davis and to the defendants; but her title to it, as has been seen, proves to be defective. The defendants had no knowledge of any facts affecting the rights or equities of the other parties as among themselves, except so far as was to be gathered from the face of the papers. Looking at the face of the papers, it would appear that the plaintiff was an original promisor on the note to the savings bank, and that his mortgage was given to secure his own debt, and that the mortgage by Caroline F. Rand to secure the same debt was additional security given by one who was not a party to the indebtedness; and on the face of the papers it would appear that, as between herself and the plaintiff, she was the one who was entitled to protection.

The defendants, in taking their mortgage from Caroline, and in taking the assignments from the savings bank and from Davis, might properly act on what the papers disclosed, and they had no reason to infer that Caroline's land was bound to the plaintiff in case of his paying the debt to the savings bank. If, now, the plaintiff is entitled, by way of subrogation, to the benefit of the mortgage given by her to the savings bank, it will impair the security of the other mortgages given by her which the defendants hold. It would not be equitable to allow this to happen, and if under other circumstances the plaintiff would be entitled to enforce the equitable right of subrogation, this should not be allowed where it would have the effect to impair the intervening rights of the defendants, who have taken a title on the faith of what was to be gathered from the records. The matter of costs was within the discretion of the court, it appearing that the defendants refused to render an account of the amount due on the mortgage, when requested by the plaintiff. Pub. Sts. c. 181, § 29. *Montague v. Phillips*, 16 Gray, 566.

The result is, that so much of the decree as sustains the plaintiff's claim of subrogation must be reversed; but in other respects it is to be affirmed.          *Decree accordingly.*