NEW ENGLAND TRUST COMPANY *vs.* NEW YORK BELTING AND PACKING COMPANY.

Suffolk.   January 14, 1896. — May 5, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Promissory Note — Pledge — Action — Contribution — Equity.*

If a promissory note is delivered for sale or discount by the maker to a broker, who fraudulently pledges it as collateral security for his indebtedness to a bank, which takes it in good faith, before maturity and without notice, and which also holds other notes pledged to it by the broker, some under like circumstances, and receives from the payment of most of these notes a sum more than sufficient to pay the broker's debt to the bank, the latter cannot maintain

an action at law against the maker upon the note first named for the benefit of the makers of the other notes, who have not requested or consented to the bringing of such action, but the remedy of the parties in interest is by a bill in equity for contribution.

CONTRACT, on three promissory notes of $5,000 each, dated respectively July 24, 1890, August 12, 1890, and August 22, 1890, made by the defendant, each payable in eight months after date to its own order and indorsed by it in blank. Trial in the Superior Court, without a jury, before *Mason*, C. J., who reported the case for the determination of this court, in substance as follows.

The notes were delivered to the Potter Lovell Company, a corporation organized and existing under the laws of this Commonwealth, and doing a general banking and note-brokerage business in Boston, for the purpose of having the same sold or procured to be discounted for the defendant, and the proceeds thereof remitted to it. The Potter Lovell Company thereupon, instead of so selling or procuring the notes to be discounted for the benefit of the defendant, in violation of the understanding between them, without the knowledge or authority of the defendant, and without paying the defendant any consideration therefor, pledged the notes, together with a large amount of other commercial paper, to the plaintiff, for the purpose of securing the payment of certain notes given by the Potter Lovell Company to the plaintiff for loans made by the plaintiff to that company.

The Potter Lovell Company had, from time to time, borrowed sums of money of the plaintiff, for which it had given its notes of various dates, and was indebted to the plaintiff on August 27, 1890, the date when the Potter Lovell Company stopped payment, in the sum of $315,453.96. The plaintiff then held, as collateral security for this indebtedness, notes of various corporations and individuals, delivered to it by the Potter Lovell Company, including those in suit, amounting to the sum of $347,717.34. The whole collateral security for the several notes was held under the understanding expressed in the following letter from the Potter Lovell Company to the plaintiff, dated July 2, 1885: "You are hereby authorized to apply any securities you may have in your hands at any time belonging to us, to

any indebtedness of ours to your institution, without regard to the specifications of the notes or memoranda you may hold."

The notes in suit had been delivered by the Potter Lovell Company to the plaintiff in August, 1890, as collateral security for the indebtedness of the Potter Lovell Company to the plaintiff, in exchange for other commercial paper held as such collateral security, and were received by the plaintiff in good faith and in the ordinary course of business, and without knowledge of the circumstances under which the Potter Lovell Company had received the notes from the defendant.

Since the failure of the Potter Lovell Company, the plaintiff has received from realization of the collateral security deposited with it by that company, and in the plaintiff's hands when that company stopped payment, the sum of $324,276.24, which was more than sufficient to pay the debt of the Potter Lovell Company to it, by the sum of $8,822.28, which sum it still retains.

Of this sum so collected by the plaintiff, $264,276.24 were the proceeds of commercial paper which had been received as collateral security by the plaintiff, and had been paid by the makers without question as to the Potter Lovell Company's ownership of and right to pledge the paper.

The remaining $60,000 of the amount so collected by the plaintiff was received in payment of three notes of $5,000 each, made by David Cummings and Company; one note of $5,000, made by the Suffolk Cordage Company; and eight notes of $5,000 each, made by the Higganum Manufacturing Company.

The plaintiff offered to prove that these last mentioned notes, twelve in number, were received by the Potter Lovell Company from the makers under the same circumstances as the notes in suit were received from the defendant; and that they were paid to the plaintiff by such promisors with a formal notice to the plaintiff by the promisors of their reservation of all legal right in the premises, and of their right to share in any surplus remaining in the hands of the plaintiff after satisfaction of its debt from the Potter Lovell Company.

The judge excluded this evidence; and found for the defendant.

The case was argued at the bar in January, 1896, and afterwards was submitted on the briefs to all the judges.

*J. L. Stackpole*, for the plaintiff.

*J. J. Myers*, for the defendant.

ALLEN, J.   The Potter Lovell Company could not have enforced the notes now in suit against the defendant, but the plaintiff as pledgee took them for value without notice before maturity, and therefore it can now recover upon them to the extent of its interest, if any, and no more.   Ordinarily in such a case the pledgee can recover only to the amount of his claim, for which the notes were pledged ; and if that claim has been reduced by partial payments, he can recover only to the amount of the unpaid balance.   *Chicopee Bank* v. *Chapin*, 8 Met. 40. *Stoddard* v. *Kimball*, 6 Cush. 469.   *Fisher* v. *Fisher*, 98 Mass. 303.   The same rule is applied where a purchaser of a negotiable note has paid only in part for the same, when he learns of its invalidity as between the original parties.   If he afterwards makes further payments, he cannot recover for the same against the maker.   *Hubbard* v. *Chapin*, 2 Allen, 328.   *Dresser* v. *Missouri & Iowa Railway Construction Co.* 93 U. S. 92.   He can recover only to the amount for which he is a *bona fide* holder.

In the present case the claims of the plaintiff for which the notes were pledged have been paid in full, and in fact the plaintiff already holds a surplus in its hands, and therefore in its own right the plaintiff is not entitled to recover anything against the defendant.   But it seeks to maintain its action upon the notes in a representative capacity, not for the benefit of the Potter Lovell Company, because that company has no claim to the proceeds, but for the benefit of the makers of other similar notes which the plaintiff held in pledge, and which have been paid to the plaintiff.   It is contended by the plaintiff that the makers of those notes are entitled to contribution from the defendant, and that therefore the plaintiff is entitled to collect the full amount of the notes in suit, and add it to the surplus already in its hands, and then to make distribution in just proportion to all who are entitled to share in the surplus thus augmented.

The answer to this view is twofold.   In the first place, it does not appear that any of the makers of other similar notes asked the plaintiff to bring this action or now wish it to prosecute the same, or even that it was brought or is prosecuted with their consent or knowledge.   Under our decisions a holder of a

negotiable note who has no interest therein may maintain an action thereon with the consent and for the benefit of the real owner; but not otherwise. *Beekman* v. *Wilson*, 9 Met. 434. *Whitten* v. *Hayden*, 9 Allen, 408. *Spofford* v. *Norton*, 126 Mass. 533. *Manufacturers' National Bank* v. *Thompson*, 129 Mass. 438. Under these circumstances, the plaintiff would discharge its full duty towards the makers of other similar notes if it should give them notice that it holds the notes against the defendant, and intends to surrender them to the maker or to the Potter Lovell Company, unless objection should be made.

But, besides, the proper remedy for the parties in interest is by a bill in equity for contribution, and not by an action in the name of the plaintiff on the notes. The plaintiff asserts that notes which it held in pledge, and which stood like the notes now in suit, to the amount of $60,000, have been paid to it; and it would seem that the plaintiff holds other notes not yet paid which amount to over $8,000, and which we presume it means to collect if it can. The surplus already in the plaintiff's hands above its own claims is nearly $9,000, so that, if the plaintiff should collect the $15,000 on the notes now in suit, and the $8,000 on the notes signed by other makers, it will have in its hands the sum of $32,000 to administer by way of distribution to those entitled to share therein. The defendant of course would be entitled to share in that distribution; and, as the facts are in dispute, it would have to be ascertained whether all of the makers of the notes amounting to $60,000 and to over $8,000 stand in the same position as the defendant or not, that is, whether their notes were fraudulently pledged or not. This is denied by the defendant. The plaintiff would therefore at the last be obliged to resort to a bill in equity, to obtain a decree settling how the distribution should be made. It cannot be ascertained in the present action whether the makers of said notes stand in the same position as the defendant, because they are not and cannot be made parties to this action; nor can it be determined whether the plaintiff is entitled to collect, or will be able to collect, the outstanding notes amounting to over $8,000.

The plaintiff is not in the position of an assignee in insolvency, or of a receiver, with the duty of taking it upon itself to collect and distribute these funds. If the parties in interest are

entitled to contribution, they may maintain a bill in equity to enforce it, with rights of subrogation, if necessary, in their own names.   To such a bill in equity all persons concerned may be made parties, and the just amount due from each and to each may be ascertained.   If any sum is due in equity from the defendant, they could in such suit be ordered to pay it, and no more.   A bill in equity is the ordinary and appropriate remedy where contribution is sought, and the parties are numerous or the facts complicated.   *Whitman* v. *Porter*, 107 Mass. 522.   *Cary* v. *Holmes*, 16 Gray, 127.   *Griffin* v. *Kelleher*, 132 Mass. 82.   *Cuyler* v. *Ensworth*, 6 Paige, 32.   *Gould* v. *Central Trust Co.* 6 Abbott's N. C. 381.   *Ex parte Alston*, L. R. 4 Ch. 168.   The advantages of such a suit are obvious and marked.   The plaintiff could collect the money only by bringing separate actions against all those who may be bound to contribute, and after the final collections would have to bring a bill in equity to settle the proper distribution.   A bill in equity for contribution simplifies the litigation, prevents the hardship of requiring contributors to advance more than is due from them, and then to await the final distribution before receiving back their proper share, and probably enables the parties entitled to contribution to receive it sooner.

In order to avoid this obvious hardship to the defendant, the plaintiff suggests that a set-off may be allowed of the sum which the defendant would be entitled to receive back.   We are at a loss to see how this can be ascertained, in an action to which those representing the $60,000 and the $8,000 of notes are not parties.

For these reasons, in the opinion of a majority of the court, the plaintiff is not entitled to maintain an action at law upon these notes, and the remedy of any parties who may be entitled to contribution is by a bill in equity.   See *Bowditch* v. *Green*, 3 Met. 360; *New Bedford Institution for Savings* v. *Hathaway*, 134 Mass. 69; *Rand* v. *Cutler*, 155 Mass. 451.

*Judgment affirmed.*