# LYTTLE *v.* NATIONAL SURETY COMPANY.

BANKRUPTCY; EQUITY; PRIORITY OF LIENS; COURTS; SUBROGATION; PRINCIPAL AND SURETY.

1. A trustee in bankruptcy takes the property of the bankrupt, in a case unaffected by fraud, in the same plight and condition as the bankrupt held it, subject to all of the equities impressed upon it in the hands of the bankrupt.

D. C.]                    Statement of the Case.

2. Where a fund is in an equity court, and an issue is made as to its owner-
   ship, between a surety company asserting a lien against it and a trus-
   tee in bankruptcy, the court will adjudicate the issue with regard to
   the bankruptcy act and the rights of the respective parties under it,
   and to that end protect the estate of the bankrupt.

3. The supreme court of the District of Columbia occupies the same rela-
   tion to the District of Columbia that a State court of similar jurisdic-
   tion does to the State.

4. Where, as the result of a suit by a surety company which as surety on
   a government contractor's bond had completed, at a loss, a public
   building, the United States paid over to a receiver appointed by the
   court the balance due from the United States on the contract, and
   thereafter a trustee in bankruptcy of the contractor intervenes and
   claims that as such trustee he is entitled to the fund, and it is ad-
   mitted by the trustee that the surety company's lien on the fund is a
   valid one, and also that the surety company is entitled to be subro-
   gated to the rights of the United States in respect to the security
   of the fund, the fund will not be turned over to the trustee for ad-
   ministration in the bankruptcy court, but will be awarded to the
   surety company to the extent of its lien.

No 2700.   Submitted December 8, 1914.   Decided February 1, 1915.

HEARING on an appeal by a trustee in bankruptcy, intervener
in a suit in equity by a surety company, from a decree of the
Supreme Court of the District of Columbia holding an equity
court, awarding the plaintiff a fund in the hands of a receiver
theretofore appointed by the court.                  *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellee, National Surety Company, hereafter referred to
as the surety company, filed a bill in equity in the supreme
court of the District of Columbia against one Peckworth, here-
after designated as the contractor, and William A McAdoo,
Secretary of the Treasury of the United States, to recover cer-
tain moneys held by McAdoo as a balance due on a contract be-
tween the contractor and the United States.

The contract was for the construction of a postoffice and cus-
toms house building at Shreveport, Louisiana, for an agreed

amount, a certain percentage of which was to be retained by the United States for a period stipulated therein. It was also agreed that the contractor should pay as liquidated damages $40 per day for each day's delay beyond the stipulated date for the completion of the contract. To secure the performance of the contract, the contractor executed and delivered to the United States his bond, with the surety company as surety. The contractor not only failed to complete the building on time, but became so involved financially that the surety company was compelled to step in and complete the work at a cost of $954.92. The surety company was also compelled to assume and pay claims of subcontractors and materialmen to the amount of $22,949.64.

When the custodian certified that the building had been completed, the surety company filed its bill in the present suit, seeking to enjoin the contractor from receiving, and McAdoo from paying, the balance due from the United States on its contract, and praying that the surety company be decreed entitled to receive said balance, and that a receiver be appointed to receive the money and hold it subject to the order of the court. A receiver was accordingly appointed, and the balance found to be due under the contract, $18,431.67, was paid to him, thus eliminating McAdoo from the case.

More than a month prior to the filing of the bill in this case, the contractor was adjudged a bankrupt in the United States district court for the southern district of New York, and appellant, Lyttle, was appointed receiver of the bankrupt's estate. He was subsequently made trustee in bankruptcy. As receiver, he was merely authorized to "continue the business of the alleged bankrupt for a period of thirty days, and in his discretion to proceed with and complete such of the building contracts held by the alleged bankrupt as appear feasible and expedient." The proper officials of the United States furnished the receiver with specifications of the remaining work to be done on the building, asking him if he would elect to complete the work, to which the receiver replied that, "so far as the receiver of Charles H. Peckworth is concerned, the contract for the erec-

tion of the postoffice building at Shreveport, Louisiana, will be abandoned, he not being in a position to take up and complete the work remaining to be done." In the same communication, the receiver demanded payment of the sum of $1,413.90, which had been approved as due the contractor from the United States.

About six months after this bill was filed, appellant filed his petition in the cause, setting up his appointment as receiver of the bankrupt's estate and his subsequent appointment as trustee, and alleging that, as trustee, he was entitled to the fund, and that its payment, under order of court, to the receiver appointed in the present cause, had been inadvertently made, and without authority. He prayed for an order requiring the receiver to pay the fund to him, and for general relief. On hearing, the court entered a decree awarding the surety company the fund, less costs. From the decree, the case comes here on appeal.

*Mr. J. H. Ralston* and *Mr. W. E. Richardson* for the appellant.

*Mr. Bynum E. Hinton* and *Mr. J. J. Darlington* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The appeal can be disposed of upon the single question of whether or not the court below erred in ordering the money paid to the surety company, instead of to the trustee of the bankrupt, to be adjudicated as part of the bankrupt's estate in the bankruptcy court. The amount which the surety company finally received was about $5,000 less than the amount it was compelled to advance on account of the default of the contractor. Hence, no question as to the disposition of a surplus is involved. Counsel for appellant in their brief concede the validity of plaintiff's claim to a lien, and its right to subrogation, in the following statement: "In this proceeding the trustee in bank-

ruptcy is not questioning the validity of the plaintiff's claim to a lien, or to be subrogated to the rights of the United States in respect to the security of the fund in question. He insists, however, that the fund must be brought into the bankruptcy court, and the plaintiff's lien recognized by the orders of that court."

We start, therefore, with the concession that a lien and right of subrogation exist in favor of the surety company. That the surety company, as surety on the contract, could invoke the equitable doctrine of subrogation, is well settled. The principles upon which a surety may avail himself of this right are stated in *Ætna L. Ins. Co.* v. *Middleport,* 124 U. S. 534, 31 L. ed. 537, 8 Sup. Ct. Rep. 625, as follows: "(1) That the person seeking its benefits must have paid a debt due to a third party before he can be substituted to that party's rights; and (2) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgagees, etc. The right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another."

The surety company having a valid equitable lien on this fund, and being subrogated to the rights of the government to the extent of being reimbursed for the amount advanced under its obligation as surety, it is not clear just what claims could be asserted by the trustee to have the matter adjudicated in the bankruptcy court. The lien of the surety company against this fund was prior and superior to any claim shown to exist against the contractor or the trustee standing in his shoes. As against the contractor, and likewise against the trustee, the equity which existed in favor of the surety existed not from the date of bringing the present suit, but from the date of the bond. In *Prairie State Nat. Bank* v. *United States,* 164 U. S. 227, 41 L. ed. 412, 17 Sup. Ct. Rep. 142, the contract, as here, was for the construction of a government building. The government, as here, had the right to retain a percentage of the contract price until the completion of the work. The contractor, in consideration of advances made and to be made by the bank, gave the bank, in

1890, written authority to receive from the United States the final contract payment so reserved. The contractor defaulted, and the surety completed the work, being called upon, as here, to disburse more than the amount of the final payment due from the government. Disposing of the respective rights of the surety and the bank, Mr. Justice White, speaking for the court, said: "Sundberg & Company [the contractors] could not transfer to the bank any greater rights in the fund than they themselves possessed. Their rights were subordinate to those of the United States and the sureties. Depending, therefore, solely upon rights claimed to have been derived in February, 1890, by express contract with Sundberg & Company, it necessarily results that the equity, if any, acquired by the Prairie Bank in the 10-per-cent fund then in existence and thereafter to arise, was subordinate to the equity which had, in May, 1888, arisen in favor of the surety Hitchcock."

The trustee has not attempted to assert any superior lien on behalf of any creditor of the bankrupt. Hence, he "stands simply in the shoes of the bankrupt, and as between them he has no greater right than the bankrupt." *York Mfg. Co.* v. *Cassell,* 201 U. S. 344, 352, 50 L. ed. 782, 785, 26 Sup. Ct. Rep. 481. Or, as stated in *Thompson* v. *Fairbanks,* 196 U. S. 516, 49 L. ed. 577, 25 Sup. Ct. Rep. 306. "Under the present bankrupt act, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt."

In what position, therefore, do we find the appellant? After the court below had acquired jurisdiction of the subject-matter and the parties, and had secured possession of the fund in the hands of its receiver, appellant intervened and submitted his rights to the adjudication of the court. In asserting his rights, he did not dispute the validity of the lien or equity of the surety company, made no showing of superior claims by creditors of the bankrupt, but stood upon the bald right of a trustee, which, in the circumstances of the case, could rise no higher than the bankrupt's, to have this fund delivered to him as against the

surety company, which, as we have observed, was not only en-
titled to assert the equitable doctrine of subrogation, but to have
the subrogation date back to the giving of the bond, with right
to the fund superior to any voluntary creditors of the bankrupt.
*Prairie State Nat. Bank* v. *United States, supra.*

The jurisdiction of State courts in cases of this sort is well
established.   Under the bankrupt act of 1867, it was held that
State courts had concurrent jurisdiction with Federal courts in
suits between an assignee in bankruptcy and third parties as-
serting rights in property claimed by the assignee as belonging
to the estate of the bankrupt.   *Eyster* v. *Gaff,* 91 U. S. 521, 23
L. ed. 403 ; *McKenna* v. *Simpson,* 129 U. S. 506, 32 L. ed. 771,
9 Sup. Ct. Rep. 365.

By the same reasoning, this jurisdiction exists under the
present bankrupt act.   Of course, a State court cannot exercise
any of the functions of a bankrupt court, such as adjudging a
person a bankrupt, appointing a receiver or trustee, granting a
discharge, or distributing assets.   But where, as in this case,
the issue is between the trustee and a surety company which is
asserting a lien against a fund otherwise belonging to the estate
of the bankrupt, the suit becomes one between the surety com-
pany and the trustee representing the bankrupt's estate in the
proper court of the jurisdiction where the property is found.
The trustee is a mere party to the action, and the court will un-
doubtedly adjudicate the issue with regard to the bankrupt act
and the rights of the respective parties under it, and to that end
protect the estate.   If the party asserting a right to the proper-
ty fails, it would be the duty of the court to order the property
turned over to the trustee, and it would then become part of the
estate to be administered by the bankrupt court.   Analogous to
the jurisdiction thus exercised by State courts, is that of Federal
courts, which are not vested with probate jurisdiction, but which
have jurisdiction to hear and determine controversies between
third parties and executors or administrators in regard to prop-
erty belonging to the estate.   *Yonley* v. *Lavender,* 21 Wall. 276,
22 L. ed. 536; *Hess* v. *Reynolds,* 113 U. S. 73, 28 L. ed. 927,

5 Sup. Ct. Rep. 377; *Byers* v. *McAuley,* 149 U. S. 608, 37 L. ed. 867, 13 Sup. Ct. Rep. 906.

In *Heath* v. *Shaffer,* 93 Fed. 647, the holder of a chattel mortgage took possession of the mortgaged property before the institution of proceedings in bankruptcy against the mortgagor, and thereafter brought suit in the State courts to foreclose the mortgage against the bankrupt and his trustee. The bankrupt court refused, on a bill by the trustee alleging that the mortgage was avoidable as an unlawful preference, to enjoin the further prosecution of the suit. Upholding the jurisdiction of the State court, Judge Shiras, after quoting at length from *Eysler* v. *Gaff,* supra, said: "Thus is stated the correct rule for the guidance of the trustee in cases of this character. He should appear in the State court, and, by pleading the adjudication in bankruptcy and his appointment as trustee, lay the foundation for the protection of his rights. If he questions the jurisdiction of the State court, he can plead thereto in proper form. If the case be one that is removable under the provisions of the judiciary act, he can make the requisite showing. If he does not dispute the validity of any lien asserted by the plaintiff, he can set up his title and rights as trustee, subject to the admitted lien, and the State court will protect his rights in the premises. If he wishes to contest the validity or extent of the adverse claim asserted by the plaintiff in the State court, he can do so by answer or cross bill. If, upon the hearing, the State court holds and adjudges the plaintiff's claim or lien to be invalid and void either at the common law or under the provisions of the bankrupt act, that court would, undoubtedly, order the property to be delivered to the possession of the trustee. If the State court holds and adjudges the lien of the plaintiff to be valid, it would, upon the proper showing, also recognize the title and rights of the trustee, subject to the lien of the plaintiff, and would enforce the same according to the true intent and meaning of the bankrupt act."

Of course, the supreme court of the District of Columbia occupies the same relation to the District that a State court of similar jurisdiction does to a State, and whatever may be said

in support of the jurisdiction of the State courts would apply with equal force here. Not only did the bill of the surety company state a cause of action, but the court below was well within its jurisdiction in trying the issue and entering a decree therein.

The decree is affirmed with costs.          *Affirmed.*