MUNSEY TRUST CO. OF WASHINGTON,
D. C., v. UNITED STATES.

No. 46251.

Court of Claims.

Oct. 7, 1946.

Alexander M. Heron, of Washington, D. C. (Hinton & Heron, of Washington, D. C., on the brief), for plaintiff.

E. E. Ellison, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen. (Robert Burstein, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and JONES, WHITAKER, MADDEN, and LITTLETON, Judges.

LITTLETON, Judge.

The question presented for determination in this case involves the legal and equitable rights of the Government and the surety on certain Government contracts who paid certain amounts for labor and material claims under its payment bonds given in connection with such contracts, in a certain portion of the total of the balances in the hands of the Government and remaining due under said contracts upon completion and acceptance of the work called for by such contracts.

In May and July, 1940, the Federal Contracting Corporation, a New York corporation, entered into six contracts with the United States for the painting and repairing of certain Federal buildings, as set forth in finding 2. Under the terms of the bids of the Federal Contracting Corporation, the contracts, and the provisions of the Act of August 24, 1935, 49 Stat. 793, 40 U.S.C.A. § 270a et seq., payment and performance bonds were given by the contractor on each of which The Aetna Casualty and Surety Company was surety for the payment by the contractor to all persons supplying labor and material in the prosecution of the work provided for in said contracts and for the performance of work called for thereby. The contractor completed all six contracts and the work was duly accepted by defendant. The record does not show the exact dates on which these six contracts were completed, but they appear to have been completed during 1940. The Federal Contracting Corporation, however, as to five of the six contracts, defaulted under its payment bonds and under the contract in failing to make payment of $13,065.93 to certain persons who had supplied and furnished labor and material for use in performance of the several contracts, as set forth in finding 5. Upon completion and acceptance there remained due from the Government a certain balance under each contract, which balances totaled $12,445.03. The Government had notice of the outstanding claims for labor and material. The persons supplying labor and material to the contractor made claims upon the Aetna Company, as surety on the payment bonds given under such contracts, and the Aetna Company after having verified the correctness of such claims made payment of the several claims due under five of the contracts in the total amount of $13,065.93 between April 7 and September 6, 1941—the last payment being in the amount of $35.00. The greater part of the total amount of all claims for labor and material was paid on May 12, 1941. By reason of these payments by the Aetna Company it became subrogated to all the rights of the Federal Contracting Corporation, the laborers and materialmen, whose claims the Aetna Company paid, and of the Government so far as its rights under the contracts were concerned, in the balances due under the contracts in connection with which the surety made such payments, to the extent of such balances, and to the extent of payments made where such payments were less than the balances due under the particular contract. Prairie State Nat. Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; United States Fidelity & Guaranty Company v. United States, 92 Ct.Cl. 144. The legal and equitable rights of the surety to the balance due under said contracts were superior to those of the United States as a general creditor of the defaulting contractor on a claim arising independently of any of the contracts in connection with which the surety made such payments under its bonds. Maryland Casualty Corporation, a Corporation v. United States, 100 Ct.Cl. 513.

The balances, totaling $12,445.03, remaining in the hands of the Government and due under the six completed contracts were not paid, however, to the surety, as claimed by it, to the extent of $9,281.76, finding 10, but only $5,713.53 was paid. The difference between the total of the labor

and material claims paid by the Aetna Company, and applicable to the balances remaining due under five of the contracts in the total amount of $9,281.76, and the amount of $5,713.53 paid to the surety by defendant, is $3,568.23, which amount the plaintiff, on behalf of the surety, seeks to recover herein.

The refusal of the defendant to pay the Aetna Company $9,281.76 on its claim, and to pay the plaintiff, after it was appointed receiver, the entire balances totaling $12,-445.03, was due to the fact that the Federal Contracting Corporation had become indebted to the Government for $6,731.50 on an independent transaction not arising under any of the contracts in connection with which the surety had made payments under its payment bonds, and the claim of the Government that its right of offset was superior to any legal or equitable right which the Aetna Company, as surety, had under the contracts and the payment bonds in the balances remaining due under those contracts.

The offset made by the Comptroller General was the result of a settlement and adjustment made by him under authority of section 236 of the Revised Statutes, 31 U.S.C.A. § 71, to satisfy a debt due by the Federal Contracting Corporation to the Government which arose in the manner hereinbelow set forth.

On October 18, 1940, the Federal Contracting Corporation, pursuant to an advertisement and invitation for bids by defendant, submitted a bid in the sum of $20,-743.00 for painting the Post Office building at St. Louis, Mo. This bid was accepted by defendant, and the contractor signed the standard form of Government contract which, in its bid, it had agreed to execute. However, the contractor was unable to furnish surety bonds for performance and for payment to all persons supplying labor and material in prosecution of the work provided for in the contract. Thereupon the United States refused to award the contract to the Federal Contracting Corporation. It readvertised and relet the work to be performed to the lowest bidder at $27,-867.00, which, together with the cost of readvertising in the amount of $22.50, created an indebtedness of $7,146.50 from the Federal Contracting Corporation to the United States. After the application of the cash deposit of $415.00 made by the Federal Contracting Company with its bid, there remained an indebtedness due from the contractor of $6,731.50.

Soon after its appointment as receiver, as set forth in finding 7, plaintiff on January 10, 1942, formally notified defendant of its appointment and demanded payment to it by the United States of the balances due under the contracts hereinbefore mentioned, and requested that settlement under each of the contracts be made and that the balances due be paid over to it. Instead of doing this, the Comptroller General on September 27, 1943, made the offset of $6,-731.50, as above mentioned, and paid the balance of $5,713.53 to plaintiff. Plaintiff protested this adjustment and settlement to the extent of $3,568.23, and on March 15, 1944, after the decision of this court in Maryland Casualty Company v. United States, supra, further protested the action of the Comptroller General and requested reconsideration and payment of the additional amount of $3,568.23 under authority of the Maryland Casualty Company decision. The Comptroller General refused to modify the settlement which he had made and advised plaintiff of his reasons therefor as follows:

"At the outset, in considering the effect to be given to the holding of the Court of Claims, above referred to, it appears proper to repeat the sentiment often heretofore expressed that while the decisions of inferior courts are all given most careful study and consideration, especially where it appears that the merits of the legal principles involved have been presented to, and fully and faithfully considered by the court, nevertheless, it is the responsibility of this office, under the Act of June 10, 1921, 42 Stat. 24, in the settlement and adjustment of claims, both for and against the United States, ultimately to determine the law for itself. 14 Comp.Gen. 648, 5 id. 720; 3 id. 479; id. 316.

"This office does not consider the holding in the Maryland case a controlling precedent with respect to the right of subroga-

tion of a surety to amounts otherwise due from the United States, as against the right of the Government to set off, out of such funds, moneys due from the surety's defaulting principal. The Government's right of set-off is a legal right. This is so whether it be considered to derive from section 236, Revised Statutes, 31 U.S.C.A. § 71 (see Taggart v. United States, 17 Ct.Cl. 322), or whether it be considered merely as a part of the general law of set-off. See Watkins v. United States, 9 Wall. 759, 764, 19 L.Ed. 820; United States v. Eckford, 6 Wall. 484, 488, 18 L.Ed. 920; Pennsylvania Railroad Co. v. Miller, 124 F.2d 160, 162, 140 A.L.R. 811; The Gloria, D.C., 286 F. 188, 192, affirmed sub nom., United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313. When, therefore, a surety's equitable right of subrogation comes in conflict with the Government's legal right, the equitable right must yield. 'Subrogation being the creature of equity * * * it will not be enforced * * * at the expense of a legal right.' German Savings & Loan Society v. Tull, 9 Cir., 136 F. 1, 6; Gray v. Jacobsen, 56 App.D.C. 353, 13 F.2d 959, 48 A.L.R. 583; Federal Land Bank v. Smith, 129 Me. 233, 151 A. 420; Rand v. Cutler, 155 Mass. 451, 29 N.E. 1085.

"Accordingly, and in the absence of a contrary ruling by the Supreme Court of the United States, the Maryland case may not be accepted to change or modify the long standing view of this office that the right of the United States to have its debts first satisfied from funds earned by a contractor is paramount to the right of a surety asserting a loss in making payment of the claims of materialmen and laborers, and the action heretofore taken in the matter must be, and is, affirmed."

In its brief and argument in this case the defendant seeks to sustain the position taken by the Comptroller General and has reargued the question decided by this court in the Maryland Casualty Company case. We find no reason for modifying our opinion in that case.

In Moran v. Guardian Casualty Company, 64 App.D.C. 188, 76 F.2d 438, 439, the Circuit Court of Appeals for the District of Columbia said:

"In Lyttle v. National Surety Co., 43 App.D.C. 136, we held, in a case involving the rights of a surety who had paid the claims of laborers and materialmen under a bond similar in all respects to the one here, that the surety was entitled to be subrogated not only to the rights of the contractor, but also to the rights of the United States under the contract. The former rights are here and generally bootless, but the latter include every right which the United States were capable of asserting against contractor had the surety not satisfied the obligations of the contract. We likewise held that this equitable right or lien existed in favor of the surety from the date of the bond. We said as much again in the recent case of Philadelphia Nat. Bank v. McKinlay, Trustee, 63 App.D.C. 296, 72 F.2d 89. In these circumstances, we have no doubt that appellee, as surety, is entitled to priority, notwithstanding the subsequent assignment of the fund by contractor; and this is true even though the assignment was given for an advancement of money used in the prosecution of the work. Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412. And see, also, Exchange State Bank v. Federal Surety Co., 8 Cir., 28 F.2d 485-488, where the cases are collected at great length. * * *

"In that case [of Moran lending money to the contractor], he is presumed to act with full knowledge of the rights of the surety, and these rights, as we have seen, include a lien in favor of the surety from the date of the execution of the bond, for the surety by the terms of the bond is bound to the payment of all claims growing out of the performance of the contract. And this, of itself, creates the equitable right of subrogation. The subsequent assignment, therefore, was wholly insufficient to create a superior lien to the then existing lien of the surety (appellee). These principles are so elementary that further discussion would obviously be out of order."

In Farmers' Bank v. Hayes et al., 6 Cir., 58 F.2d 34, 37, the court said: "This is on the principle that a surety who gives bond to the owner to insure performance of a

building contract by the contractor is subrogated to the rights of the owner in the percentage which the owner retains as security for the performance of the contract, when upon default by the contractor the surety performs, as in Prairie State National Bank case, or on the principle that when the contractor performs his obligation to the owner, but fails to pay labor and materialmen, and the surety is obliged to do so under his bond, the surety is subrogated to liens of laborers and materialmen upon the fund reserved by the owner, as in the Henningsen case (Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547). The distinction between the Prairie Bank and the Henningsen Cases is pointed out by this Court in Belknap Hardware & Manufacturing Company v. Ohio River Contract Company, 6 Cir., 271 F. 144. But, whether in the instant case the surety's rights arise out of subrogation to the rights of the board of trust or of the equitable liens of the laborers and materialmen, the result is the same. In either case the equitable rights of the surety become fixed as of the date of the bond, and are superior to those of any holder of an after-acquired lien. Whether the lien of the surety extends only to the reserved percentage under the contract, or also to sums earned under the contract, and retained by the owner, is a question which has frequently been raised. We think it is now settled that it extends to both. * * *." ˷

In United States Fidelity and Guaranty Company v. Sweeney, 8 Cir., 80 F.2d 235, 238, the court said: "* * * Laborers and materialmen, however, have an equitable right to payment from funds due a contractor on a public improvement in preference to general creditors. Belknap Hardware & Manufacturing Co. v. Ohio River Contract Co., 6 Cir., 271 F. 144. The statutory requirement of a bond to protect them is not inconsistent with such equitable rights. American Surety Co. of New York v. Westinghouse Elec. Mfg. Co., 5 Cir., 75 F.2d 377. There is a recognized equitable right of unpaid furnishers of labor or materials to such part of the contract price as may remain in the possession of the government after the completion of

the work by the contractor. Riverview State Bank v. Wentz, 8 Cir., 34 F.2d 419; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; Farmers' Bank v. Hayes, 6 Cir., 58 F.2d 34; American Surety Co. of New York v. Westinghouse Elec. Mfg. Co., 5 Cir., 75 F.2d 377.

"Appellant was bound by contract to pay the claims for labor and material, and upon paying these claims it was entitled to be subrogated to the superior equities of the laborers and materialmen, and when payment was made its rights related back to the time of making the contracts. Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 145, 41 L.Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; London & Lancashire Indemnity Co. v. Endres, 8 Cir., 290 F. 98; In re Scofield Co., 2 Cir., 215 F. 45; Farmers' Bank v. Hayes, 6 Cir., 58 F.2d 34."

In Morgenthau et al. v. Fidelity & Deposit Company of Maryland, 68 App.D.C. 163, 94 F.2d 632, 635, the court said:

"The surety claims an equitable lien on the fund grounded upon the assignment made by the contractor as consideration for the execution of the bond. It likewise claims the fund by subrogation on account of the money paid out by it to complete the contract and discharge the claim.

"We are of opinion that the surety's position in this latter respect is sustained by reason and authority. Its bond was that the contractor would complete the contract and pay promptly all persons furnishing labor and materials in connection therewith. The contractor failed to carry out his contract, and the surety advanced the money, and in addition paid all the labor and material bills still unpaid. It did this, not as a volunteer, but by reason of its contract entered into before the commencement of the work. Its advance to the contractor and its payment to the laborers and materialmen released the contractor from his obligations under the contract and, as the Supreme Court said in Henningsen v. United States F. & G. Company, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547, likewise released the government from all equitable

obligations to see that the laborers and supplymen were paid. It thereby became subrogated to the equity of the United States. Its action created in itself an equitable right which entitled it to demand and receive the balance due from the United States, and this equitable right, as the Supreme Court said in Prairie State Nat. Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, * * * arose from and related back to the date of the original contract of suretyship. * * *"

■ Aside from the question of whether persons who supply labor and material for use on work under a public contract, or the surety who pays their claims, acquires an equitable lien on the balance due under the contract upon completion thereof, including the retained percentage, we are of opinion under the long line of decisions involving the rights of laborers and materialmen, and sureties, that the equities of such laborers and materialmen, and of the surety who pays their claim, in any balance remaining due under the contract on which the contractor defaulted in payment, are clearly superior to the rights of general creditors, including the Government. When the surety pays labor and material claims upon which the contractor defaulted, the surety's rights relate back to the date of the bond, which, in this case, was prior to the date on which the Federal Contracting Corporation became indebted to the United States on November 16, 1940, when it failed to furnish a bond under a contract with the defendant pursuant to its bid. The reason for the rule that such claims are superior to those of general creditors is that the persons who supply labor and material, although having no legal cause of action against the United States, because not in contractual relation with the United States, in effect furnished the Government with a part of what its contract called for and, having received the benefit of such labor and material, the Government is not entitled, as a general creditor, to retain the balance due under the contract and apply it in satisfaction of an independent claim against the defaulting contractor.

In Maryland Casualty Co. v. United States, supra, we held that the contract, the bond, and the transaction as a whole should be construed "as implying a promise on the part of the Government to the surety that it will not so settle the account of the contractor as to leave the surety in the position of paying the contractor's taxes."

■ We think it is immaterial that the laborers and materialmen, not being in contractual relation with the United States, and, by reason of the provision in the contract that all material and work covered by partial payments made should thereupon become the sole property of the Government prevented them from having a lien upon the structure, had no legally enforceable claim against the United States for the balance due under the contract. The equitable interests of laborers and materialmen and the surety on the payment bond given under the contract and the requirements of the act of Congress (40 U.S.C.A. §§ 270a, 270b, 270c, and the earlier Acts of August 13, 1894, 28 Stat. 278, and February 24, 1905, 33 Stat. 811, 40 U.S.C.A. § 270 note) have been firmly established without exception by a long line of decisions. These decisions hold, first, that the priority or preference of the United States in payment of its debts in the case of insolvency of its debtor is inferior to an existing equitable lien; second, that suppliers of labor and material, as well as a surety who has paid their claims, have a lien upon a public structure where the contract did not vest in the United States title to the work and the material as the work progressed and progress payments were made (United States v. Ansonia Brass & Copper Company, 218 U.S. 452, 453, 31 S.Ct. 49, 54 L.Ed. 1107); third, that the equities of laborers and materialmen, and sureties upon the bond, in any balance remaining due under the contract, including retained percentages, are superior to the rights and claims of general creditors and assignees of the defaulting contractor.

With respect to the superior equities of the laborers and materialmen and the surety upon a payment bond, the court, in Henningsen v. United States Fidelity & Guaranty Company of Baltimore, Maryland, supra [208 U.S. 404, 28 S.Ct. 391], said: "The Guaranty Company was surety on

that contract [for the construction of the public work]. Its stipulation was not merely that the contractor should construct the buildings, but that he should pay promptly and in full all persons supplying labor and material in the prosecution of the work contracted for. He did not make this payment, and the Guaranty Company, as surety, was compelled to and did make the payment. Is its equity superior to that of one who simply loaned money to the contractor, to be by him used as he saw fit, either in the performance of his building contract or in any other way? We think it is. It paid the laborers and materialmen, and thus released the contractor from his obligations to them, and to the same extent released the government from all equitable obligations to see that the laborers and supply men were paid. It did this not as a volunteer, but by reason of contract obligations entered into before the commencement of the work [citing cases]."

With respect to any balance, including reserved percentage under a contract where the contractor has defaulted upon the payment bond, the effect of the statute requiring such bond, the contract and the bond itself, when read together, is to make the equity of laborers and materialmen and the surety superior to the claims of general creditors and subsequent assignees of the defaulting contractor, and out of this equity there grows a right or interest of the laborers and materialmen and the surety in the retained percentage which, even if not a lien in the strict and proper sense, brings kindred consequences along with it, and a court applying equitable principles in such case will come to the aid of one whose equity is superior. In the case at bar the United States was, upon completion of the contracts by the Federal Contracting Corporation, a stakeholder of the balance due thereunder in the total amount of $12,445.03 for payment or distribution thereof to the persons entitled thereto. Although the Government was not legally liable to the suppliers for labor and material to the defaulting contractor, because they were not in contract relation with it and had no established lien upon the structure, or upon the balances due under the contracts, nevertheless, as held in Henningsen v. United States Fidelity & Guaranty Co., supra, certain equitable obligations rested upon the Government to see that the laborers and supply men were paid to the extent of any amount, or balance, remaining due under the contracts. The surety on the defaulting contractor's payment bond was in contractual relation with the United States, and when it paid the claims of the laborers and supply men against the Federal Contracting Corporation it was subrogated to all the equity in favor of laborers and supply men. The right of the surety to make demand and to receive any balances due under the contracts, to the extent of such balances or to the extent of the payments so made, as against all general creditors of the defaulting contractor related back to the date of the payment bond which, in this case, was July 1940.

In addition to being a stakeholder of the balances due under the contracts involved in this case, the United States in November 1940 became a general creditor of the Federal Contracting Corporation by reason of the failure of that corporation to enter into another contract with the Government pursuant to its accepted bid. It was therefore a general creditor of the defaulting contractor on a claim not arising under the contracts in respect of which it held certain unpaid balances. In these circumstances the claim of The Aetna Casualty and Surety Company and of the plaintiff, as receiver for the balances due under the completed contracts with the Federal Contracting Company to the extent of $9,281.76 (finding 10), was and is superior to the claim of the United States, as a general creditor on an independent claim.

The defendant argues, however, that the legal right of the Government to satisfy its independent claim against the defaulting contractor by the offset made September 27, 1943, was superior to and superseded any legal or equitable claim which laborers and materialmen, or the surety, had with respect to the contract balances in its hands, since the Government had no obligation to pay debts of the defaulting contractor to laborers and materialmen, and since the amount due from the Government

under the completed contracts was not a trust fund for the satisfaction of such claims. This argument as to the superior right of the Government in the contract balances is based upon the general right of the Government, which is the common right of any creditor, to apply the unappropriated monies of its debtor in its hands to the extinguishment of the debt due the Government and, also upon the provisions of section 236, R.S., as amended, 31 U.S. C.A. § 71.[1]

Neither the general right of the Government to make offsets nor the provisions of sec. 236, R.S. give to the claim of the Government any greater equitable force and effect than would attach to the claim of any general creditor to the contract balances in the Government's hands. The provision for administrative settlement and adjustment of claims and demands by the Government, or against it, and all accounts with which the Government is concerned, either as debtor or creditor amounted to no more than the statutory declaration of a right which the Government would otherwise have, and the term "settled and adjusted" was used to describe administrative determination of the amount due, either by or to the Government. The statutory provision for administrative settlement and adjustment of accounts has been in effect in substance since the enactment of section 3 of the act of September 2, 1789, 1 Stat. 65, 66, establishing the Treasury Department. This statutory provision as to administrative settlement and adjustment of claims and accounts, with which the Government is concerned, has never been held by the courts to create a preference or priority in favor of the United States in respect of any debt that might be due it. This matter is taken care of by other statutory provisions, such as R.S. § 3466, 31 U.S.C.A. § 191, and the bankruptcy statutes. The statutory provision for administrative settlement and adjustment of claims and accounts is directory and was enacted

for the purpose of designating the official who should be charged with that administrative duty and responsibility. "Whether the amount so fixed is due, in law and fact, undoubtedly remains a question to be adjudicated, if properly raised in judicial proceedings, * * *." Illinois Surety Company v. United States to the Use of Peeler et al., 240 U.S. 214, 221, 36 S.Ct. 321, 324, 60 L.Ed. 609.

■ This court has jurisdiction and authority under section 145 of the Judicial Code, 28 U.S.C.A. § 250(1), to apply equitable principles where applicable in suits against the United States for a money judgment. This is such a case, since the claim here made by plaintiff, as receiver, arose under contracts with the United States, and the statute expressly provides that this court shall have jurisdiction to hear and determine all such claims "in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable." Cf. Seminole Nation v. United States, 316 U.S. 286, 294–300, 651, 62 S.Ct. 1049, 86 L.Ed. 1480, 1777.

For the reason stated and in view of the authorities cited, we hold that the right of surety and of plaintiff, as receiver, which is in the nature of an equitable lien, to have the contract balances in the Government's hands applied in satisfaction of payments made by the surety to laborers and materialmen cannot be displaced by the Government's general right of offset.

Plaintiff is entitled to recover $3,568.23 and judgment will be accordingly entered in its favor for that amount. It is so ordered.

JONES and WHITAKER, Judges, and WHALEY, Chief Justice, concur.

MADDEN, Judge, took no part in the decision of this case.

---

[1] "All claims and demands whatever by the Government of the United States or against it, and all accounts whatever with which the Government of the United States is concerned, either as debtor or as creditor, shall be settled and adjusted in the General Accounting Office."