THE FARM LAND MORTGAGE AND DEBENTURE COMPANY v. MANSON ELSBREE *et al.*

1. PROMISSORY NOTE—*Action by Indorsee—Burden of Proof.*
   Where an action was brought upon a promissory note, and to foreclose a mortgage securing the same, and where it was alleged that the payee of the note duly indorsed the same to the plaintiff, and the copy of the note attached to and filed with the petition showed that there was no indorsement thereon, the unverified denial of the defendant put in issue the title and ownership of the note, and the burden of proof to establish the same rested upon the plaintiff.

2. REAL-ESTATE MORTGAGE — *Title—Evidence.* The state of the public records respecting the title or ownership of a mortgage upon land, at a particular time, should be established by the public records, and not by the original mortgage.

3. ——— *Subrogation.* Where a man takes a mortgage upon land with the understanding that it shall be a first lien upon the same, and the money advanced is used in discharging prior incumbrances upon the same land, he will, where, under the circumstances it is just and equitable to do so, be subrogated to the rights of the prior incumbrancers whose debts have been paid by the money which he has advanced upon the mortgage.

*Error from Marion District Court.*

THIS was an action brought by Manson Elsbree to recover upon a promissory note for $1,000, executed by Ferdinand Wahl and Louise Wahl, and payable to the order of Joseph M. Young five years after its date, to wit, May 6, 1886.   The petition averred that at the same time the makers of the note executed and delivered to Young a mortgage upon a tract of land which they owned in Marion county, to secure the payment of the promissory note.   The mortgage was duly recorded upon the same day.   Copies of the note and mortgage were attached to the petition, and it was alleged that the note was duly indorsed by Young to the plaintiff before maturity, who was now the legal owner and

holder of the same, together with the mortgage securing the same. It was further alleged that default had been made in the payment, and the plaintiff in exercise of his option had declared the whole sum of money mentioned in the note due and payable. In addition to the makers of the note, C. A. Grimes, N. C. Elsbree, and the Farm Land Mortgage and Debenture Company were made defendants because they claimed to own an interest in the mortgaged land. N. C. Elsbree, one of the defendants, filed an answer or cross-petition setting up a promissory note executed by Wahl and wife to Joseph M. Young for $900, on March 6, 1886, due in five years, and which was secured by the mortgage already referred to. He further alleged that the note, a copy of which is attached to his pleadings, was duly indorsed by Young to him before maturity, and that he was then the owner and holder of the same. The written indorsement upon the note, as shown by the copy, is as follows :

"For value received, I hereby assign and transfer the within note and coupons, together with all my interest in and rights under the mortgage securing the same, to N. C. Elsbree, and guarantee the payment.                        Jos. M. Young."

It is alleged that there is still due and unpaid on the note the sum of $533.20, with interest from January 19, 1889, at 12 per cent. per annum. The Farm Land Mortgage and Debenture Company filed answers and also a cross-petition, denying generally the averments of the Elsbrees, except that there was an admission of the execution by the Wahls of the note and mortgage to Young on March 6, 1886. There was an averment that on January 19, 1889, Wahl and wife procured an actual loan from them of $6,000, and on that day executed a note for that amount, payable January 1,

1894, with interest at the rate of 9 per cent. per annum, payable semi-annually, and that to secure the payment of the note they executed a mortgage upon the land previously mortgaged to Young, which was duly recorded. Copies of the note and mortgage were set forth. It was further alleged that at the time of making this loan and before the payment of the money, Joseph Young, to whom the other note and mortgage were given, agreed in writing with the company that in consideration of the sum of $848.10, then and there paid out of the $6,000 loan, to discharge of record the $1,900 mortgage before referred to, and to make it subsequent and subordinate to the $6,000 mortgage, and that the $848.10 should be used as a part payment of the $1,900 mortgage. It is alleged that Young did discharge the mortgage of record in accordance with his agreement, and also by indorsing upon the margin of the record of the $1,900 mortgage the following words:

"I, J. M. Young, the within-named assignee and mortgagee, for a valuable consideration, do hereby consent that the mortgage of $6,000 in favor of the Farm Land Mortgage and Debenture Company shall become the first and superior lien on section 8, township 19, range 5 east, in Marion county, Kansas.

"January 19, 1889.                    J. M. YOUNG.

"Attest: FERD. J. FUNK, *Register of Deeds.*"

It is alleged further that it had no notice at the time of making the loan that the Elsbrees had or claimed any right or interest in the mortgage of $1,-900, or the notes secured thereby, but dealt with Young as the owner and holder thereof. It is alleged that Young is the real owner and holder, and was at the time of the negotiation of the loan, and that the transfer of the notes to plaintiff is a sham and subterfuge, made for the purpose of cheating and defraud-

ing the company. There is a further averment that
the mortgage is fraudulent, without consideration,
and that it has been paid and satisfied. It is averred
that the mortgage of the company is a first and supe-
rior lien upon the premises mortgaged, and judgment
is asked against the Wahls for the amount of the loan,
with interest thereon, and also that it be decreed a
first and superior lien upon the mortgaged premises,
and that they be sold in satisfaction of the judgment
and lien. At a trial had on September 18, 1890, judg-
ment was given in favor of the plaintiff, Manson Els-
bree, in the sum of $1,544, and a judgment in favor
of N. C. Elsbree in the sum of $480.60, and it was
decreed that the mortgage to secure their claims
should be foreclosed and declared a first lien on the
mortgaged premises, and that the premises should be
sold and the proceeds should be applied to the pay-
ment of costs and taxes, and then in payment of the
judgment of the Elsbrees in proportion to the amounts
of each respectively. No judgment was awarded in
favor of the Farm Land Mortgage and Debenture Com-
pany, nor was it allowed a lien upon the premises.
The company excepted to the rulings and judgment of
court, and brings the case here for review.

*Wm. R. Hazen*, for plaintiff in error.
*Keller & Dean*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: When the trial was begun the court
ruled that, as there was no verified denial of the exe-
cution of the notes upon which the Elsbrees were
seeking to recover nor of the indorsements thereon,
the burden of proof rested upon the Farm Land Mort-
gage and Debenture Company. In this we think there

was error.   While it was alleged in the petition that the note upon which Manson Elsbree sought to recover was duly indorsed by Joseph M. Young, a copy of the same was set out in the petition, and upon it there was no indorsement.   Under the code a copy was required to be attached to and filed with the pleading, and the one which was attached to the petition in this instance purports to be true and complete.   It plainly contradicted and overcame the allegation of indorsement.   In such a case, the statement that the note was duly indorsed cannot be regarded as a fact nor any more than a conclusion of law, and hence the unverified denial of the company put in issue the title and ownership of the note.   The mortgage securing the Elsbree notes was given to Joseph M. Young in May, 1886, and nearly three years later Wahl, the owner of the land, desired to obtain a $6,000 loan to be used in discharging maturing liens upon the same land that was mortgaged to Young, and through the aid of Young the loan was obtained from the Farm Land Mortgage and Debenture Company, the company being unwilling to place the loan, unless it could have a first mortgage upon the land.   Young agreed, for a consideration of $848.10, to postpone the $1,900 mortgage to the one securing the $6,000 loan.   He was in possession of the notes and claimed full control of the same.   For the purpose of subordinating the mortgage for the one about to be given, a writing was executed, which was probably sufficient for the purpose, if Young had been the owner of the notes or had had sufficient authority from the owners to make the agreement and release that were made.   The Elsbrees claimed that there had been a *bona fide* transfer of the note and mortgage to them, and that Young was without the authority to

1. Promissory note—action by indorsee—burden of proof.

make the agreement which he had attempted to make. On the other hand, the company contended that the alleged transfer from Young was a sham and subterfuge, and that it had dealt with Young as the owner of the mortgage, without notice of any adverse right in the Elsbrees. In the trial it was an important question whether the company had actual or constructive notice that there had been a transfer of the note and mortgage, and as to what transfers of title or interest in the land were shown by the public record at the time the last mortgage was executed. The burden of proof having been placed upon the company, it offered proof of what the records showed as to the $1,900 mortgage at the time the $6,000 loan was made by the company. This was excluded upon the ground that the original mortgage was in court, and was available to the company for purposes of evidence. The production of the original, however, was not competent evidence of what the public records disclosed respecting the title or ownership of the mortgage at the time Young attempted to postpone that mortgage to the later one. This testimony should have been admitted, but whether its exclusion constitutes a sufficient ground for a reversal we need not now determine.

2. Real-estate mortgage—title—evidence.

There is considerable dispute in the evidence as to the authority of Young to represent and bind the Elsbrees, and much is made of the fact that their money was invested, and when collected was reinvested by him as he thought best to do, and also of the fact that he had possession of the notes. There is some contention as to the authority of one Cammon, a local agent, who acted for the company, but these conflicts must be determined by the trier of the facts. If it should finally be held that Young was not authorized to sub-

ordinate the $1,900 mortgage to the later one, and that the attempt was ineffectual, then we would think that the company should be subrogated to the rights of the holders of the incumbrances and liens which were discharged with the money obtained from the company.   The $6,000 loan was obtained for the purpose of discharging accrued and accruing incumbrances upon the land, and the proceeds appear to have been devoted to that purpose.   It seems that there was a prior mortgage of $4,000, which with accrued interest amounted to $4,952.50 that was paid from that fund.  There was a claim of $186.70 for unpaid taxes, which was paid out of the money received from the company; and then there was $848.10 paid to Young to secure the release and postponement of the $1,900 mortgage to that of the company, which was actually paid to Elsbree, and the amount so paid was credited upon his note.

From the facts developed in the present trial of the case it appears to be highly equitable that subrogation should be made if the agreement of Young proves to be abortive.   The money was advanced by the company upon the understanding and belief that it had obtained a first lien upon the premises, and was used as it was intended for the payment of prior incumbrances.   If the company succeeds to the rights of the prior incumbrancers, it will not change the position of the $1,900 mortgage nor depreciate the security of the same.   The Elsbrees, if they own the notes and mortgage, could lose nothing by the substitution.   Their mortgage security is just as good after payment and substitution as it would have been if the $6,000 mortgage had not been executed and payment of the prior incumbrances had not been made.   In fact they occupy a more favorable

3. Subrogation.

position, because $848.10 was paid upon their mortgage from the proceeds of the $6,000 loan. After deciding that the Elsbrees had a first lien, the court did not allow the Farm Land Mortgage and Debenture Company to take the places of the incumbrancers whose debts and securities had been paid and discharged from the money advanced by the company. No personal judgment was awarded to the company, nor was it decreed to have a lien of any rank upon the mortgaged premises.

We are satisfied from an examination of the record that the case should be retried, and for that purpose the judgment will be reversed, and the case remanded.

All the Justices concurring.