Rockingham, }
Nov. 6, 1918. }

## CHARLES F. FIFIELD v. EDWARD D. MAYER & a.

A surety who has signed a note secured by a second mortgage, upon the mortgagor's representation that the proceeds thereof will be applied to discharge all claims upon the premises, is entitled after payment of such note by him to subrogation under the first mortgage as against a lienor subject thereto, where the proceeds of the second mortgage note have been applied to discharge the first mortgage.

The fact that the loss incurred by one seeking to be subrogated resulted from his own negligence will not debar him from the right of subrogation unless its enforcement would be prejudicial to others who are not at fault.

ACTION, to enforce a lien under P. S., c. 141. In pursuance of a contract for electrical equipment between the plaintiff and the defendant Mayer, the plaintiff between August 15, 1915, and January 27 1916, furnished the labor and material on Mayer's theater building, for which the lien is claimed.

The following facts were reported by a referee: Mayer bought the theater property some time previous to March 9, 1915. At that time it was subject to a mortgage to secure a note due the Union Five Cent Savings Bank for $2,500. On that day he paid $1,000 of this loan and gave a new note secured by a mortgage on the same property for the balance, $1,500. On the first day of May, 1915, he entered into a written contract with the firm of Kelly Brothers for the construction of the theater building. On July 20, 1915, he gave Kelly Brothers a mortgage in the sum of $30,000 on the property, conditioned to secure their charges for building the theater, and on the same day the mortgage for $1,500, of the Union Five Cent Savings Bank was assigned to Kelly Brothers. About November 1, 1915, Kelly Brothers having completed their contract were pressing Mayer for a settlement. On November 6, 1915, he executed a mortgage to the Amoskeag Savings Bank, to secure a loan of $14,000, but did not receive the money until later. On November 19, 1915, he procured a loan from the Union Five Cent Savings Bank of Exeter for $5,500, the defendants, Weeks, Cunningham, Nute, Folsom and Sawyer, signing the note as sureties. On November 20, Mayer having secured the above $5,500 of the Union Five Cent Savings Bank went to Kelly Brothers' office. There was present a representative of the Amoskeag Savings Bank with the $14,000, borrowed of that bank, and with the proceeds of

these two loans Mayer paid Kelly Brothers their bill in the sum of $16,887.16, which sum included the mortgage note of $1,500, assigned by the Union Five Cent Savings Bank to Kelly Brothers on July 20, 1915, and which mortgage was then discharged by Kelly Brothers; and out of the same funds he paid the other bills for labor and material. The above named sureties, when they signed the $5,500 note to the Union Five Cent Savings Bank at the request of Mayer, were informed by him that the proceeds of the note were to clean up Kelly Brothers and leave nothing against the theater. The sureties did not know of the mortgage to the Amoskeag Savings Bank, had no knowledge of the several builders' liens on the theater property, and made no actual investigation or inquiries as to the condition of the title. When the sureties signed the note Mayer agreed to secure them by a mortgage on the theater property, which he afterwards executed to them on the 22nd day of November, subject to the mortgage to the Amoskeag Savings Bank. The sureties have since paid the $5,500 note. It is found that they were negligent in not ascertaining the existence of the plaintiff's lien. The court found they were entitled to subrogation to the rights of Kelly under his mortgage, and the plaintiff excepted. Transferred from the January term, 1918, of the superior court by *Allen*, J.

*Samuel K. Bell* and *Sleeper & Brown* (*Mr. Sleeper* orally), for the plaintiff.

*Scammon & Gardner* and *Arthur O. Fuller*, for the defendants.

WALKER, J. The defendant sureties claim they are entitled to be subrogated to the rights of the mortgagee, Kelly, whose mortgage and liens were paid by the bank's money for which they were sureties, and which they have paid to the bank, while the plaintiff claims that his lien is superior to the defendants' mortgage, which ought not to be treated as a prior incumbrance or to occupy the position of the former mortgage which was discharged. Upon these evidentiary facts, which were reported by a referee, the court found that the defendants were entitled to subrogation in accordance with their claim. To this finding the plaintiff excepted.

The plaintiff's positions are that when the original Kelly mortgage was discharged his lien was thereby advanced and was no longer subject to that incumbrance, that the mortgage to the defendants, which is subject to the plaintiff's lien, was what they contracted for,

and that having no interest in the discharged mortgage, they are not equitably entitled to subrogation. In short, the claim is that in paying or furnishing security for the payment of the Kelly mortgage they were what is termed "volunteers" having no right to redeem from that mortgage, and consequently no right of subrogation.

It may be conceded that merely furnishing the money for the payment of a mortgage debt upon receiving a new mortgage as security for the money advanced does not entitle one to the benefit of the original security by way of subrogation. There is no equity in relieving one from the consequences resulting from his voluntary contract in such a case. *Ætna Life Ins. Co.* v. *Middleport,* 124 U. S. 534. The question, then, is whether the defendants were mere volunteers in furnishing the money by which the first mortgage was paid. The answer to that question makes it necessary to ascertain what the arrangement or contract was which resulted in the discharge of one mortgage and the giving of another.

It is not disputed that the sureties signed the note in question at the request of Mayer upon his representation that upon the application of the money thus secured in payment of the claims of Kelly, the land would be clear of all incumbrances; in other words, that the mortgage he proposed to give them would be a first mortgage. The fact that there was another mortgage on the premises, which Mayer did not disclose, is unimportant in this case, as there is no contention in regard to it. It is clear that the arrangement was that as security for their liability on the note they were to have, in practical effect, the same rights in the land under their mortgage that Kelly had under his. And such would have been the result of the transaction, if it had not been for the plaintiff's lien, of the existence of which the sureties were ignorant and which rendered their mortgage worthless. Upon this state of facts the law seems to be well established that the sureties are not·mere volunteers loaning their money to the debtor and taking a mortgage subject to all previous liens, but that they are entitled to subrogation to the Kelly mortgage as against the plaintiff's lien, whose existing equitable rights are not affected thereby. His security is not lessened by the substitution. His position is the same it was before the Kelly mortgage was discharged.

In *Hammond* v.. *Barker,* 61 N. H. 53, it was held that if A, holding a mortgage on the premises of B, subject to one to C, in ignorance of a subsequent attachment of the premises by C on a different debt, release his mortgage and take a new one for the same consideration, equity will as against the attachment restore the lien of his first mort-

gage; and if D, in ignorance of such attachment pay to C the amount of his mortgage, which is thereupon discharged, and take a new one from B for the money so paid to C, he will be regarded as the equitable assignee of the mortgage to C, and will be subrogated to the original rights of C therein. The principle applied in that case is decisive of the same question presented in this case. The apparent purpose of the parties to the transaction and the consideration for the sureties signing the note to the bank was not merely the wish to assist the debtor but to be protected by succeeding to Kelly's rights under his mortgage. In the case above referred to, the consideration which induced D to pay the mortgage debt to C who thereupon discharged the mortgage, was that the new mortgage he took from B was deemed to stand in the place of C's mortgage, in accordance with the presumed intention of the parties. Other cases sustaining the same principle are *Stantons* v. *Thompson*, 49 N. H. 272; *Buchanan* v. *Balkum*, 60 N. H. 406; *International Trust Co.* v. *Company*, 70 N. H. 118; *Laconia Savings Bank* v. *Vittum*, 71 N. H. 465; *Levy* v. *Martin*, 48 Wis. 198; *Sidener* v. *Pavey*, 77 Ind. 241; *Wilkins* v. *Gibson*, 113 Ga. 31; *Gans* v. *Thieme*, 93 N. Y. 225; *Farm Land &c. Co.* v. *Elsbree*, 55 Kan. 562; *Homœopathic &c. Ins. Co.* v. *Marshall*, 32 N. J. Eq. 103; 3 Pom. Eq. *s.* 1212; 37 Cyc. 468. Cases like *Rice* v. *Winters*, 45 Neb. 517; *Kitchell* v. *Mudgett*, 37 Mich. 81; *Fort Dodge &c. Ass'n* v. *Scott*, 86 Ia. 431; and *Sandford* v. *McLean*, 3 Paige 116, if in conflict with the foregoing views, cannot be followed. Whether in view of the facts involved in those cases they may be distinguished, it is not necessary to inquire.

The finding of the referee that the defendants were negligent in not discovering that the plaintiff had a lien upon the land when they took their mortgage does not constitute a reason why he should have the benefit of the money they advanced for the discharge of the Kelly mortgage. The effect of a failure to examine the records upon one's right to subrogation was a question presented by counsel in *Hammond* v. *Barker*, *supra* (see 131 Briefs & Cases, 325, 351), but it was not considered to be of sufficient importance to defeat the application of the doctrine of subrogation. Indeed, in most of the cases upon this subject it is apparent that the mistake of the party claiming subrogation might have been avoided by reasonable investigation as to the state of the title. The absence of such investigation does not prejudice the second or subsequent lien-holder; for, if his lien were discovered, the party paying off the first mortgage by taking an assignment of it would be preferred to the lien-holder, while if it

were not discovered the latter suffers no damage in his security by a decree giving the former the rights of the first mortgagee by an assignment of it or, what amounts to the same thing, by an order of subrogation. The principle is that the lien-holder's equitable rights are not infringed, impaired or in any respect changed by the mere fact that the other party was negligent of his own rights in not discovering the existence of the lien. In Sheldon, Sub. *s.* 43, it is said that "the mere fact that the loss of the party seeking to be subrogated arose from his own negligence will not debar him from the right, unless its enforcement would be prejudicial to others who are not at fault." Equity does not require that the plaintiff should be enriched in consequence of the misplaced confidence of the sureties in the untrue statement of the debtor, or in consequence of their neglect to ascertain by independent research that it was untrue. *Emmert* v. *Thompson,* 49 Minn. 386, 392; *McKenzie* v. *McKenzie,* 52 Vt. 271, 277; *Whiteley* v. *Delaney,* [1914] A. C. 132, 150. The opinion in the case of *Bohn Sash & Door Co.* v. *Case,* 42 Neb. 281, 297, in which a contrary view is entertained, is not of convincing force. The mistake of the sureties as to the condition of the title, induced by the evident fraud of the debtor, did not in equity give the plaintiff a title which he would not otherwise have had, and does not constitute a defence to their claim to subrogation. To hold otherwise would render the doctrine of subrogation ineffective in all cases where a second recorded mortgage is in force, of the existence of which the first mortgagee is ignorant, if he discharges his mortgage upon receiving a new mortgage for the same consideration, upon the mistaken idea that no other incumbrance existed. To prevent such an injustice equity affords relief.

*Exception overruled: judgment for the sureties.*

All concurred.