FEDERAL LAND BANK OF SPRINGFIELD

*vs.*

ISAAC A. SMITH, EUGENE W. WEEKS AND
PITTSFIELD NATIONAL BANK.

Somerset.     Opinion July 25, 1930.

*Ames & Ames*, for plaintiff.
*Fred H. Lancaster*,
*J. W. Manson*, for defendants.

SITTING: DUNN, STURGIS, BARNES, FARRINGTON, JJ.
PHILBROOK, A. R. J.

FARRINGTON, J. This was a bill in equity in which the Federal Land Bank of Springfield, Massachusetts, sought to be subrogated to the rights of a first mortgagee in a mortgage paid, and duly discharged, from the proceeds of a loan made by it to the mortgagor in both mortgages, and to have subordinated to the rank of second mortgage one given by the same mortgagor, and recorded prior to the Bank's mortgage but subsequently to the first mortgage paid by the Bank loan. After full hearing the bill was dismissed. The case came to this court on appeal. At the hearing, by agreement of counsel, no stenographic record of the testimony was made but the following facts appeared from the record forming a part of which is a "statement of fact" which the court assumes is by agreement of parties.

On July 30, 1926, one Isaac A. Smith gave to the Federal Land Bank of Springfield, Massachusetts, a mortgage for $2,400.00 covering real estate in Pittsfield, Maine. The mortgagor at the closing of the loan made a sworn statement that as far as he knew the premises were "free from all mortgages" or "other incumbrances" and that he made the affidavit to induce the Bank to accept a mortgage "knowing that the Bank relies on the truth of the statements herein contained." In his application for a loan he also stated there was no mortgage except the Humphrey mortgage referred to below.

The Bank's attorney in his title certificate, covering a search to July 21, 1926, disclosed as the only undischarged mortgage one from Isaac A. Smith to J. C. Humphrey for $2,000.00, the balance due on which was paid from the proceeds of the Bank loan and of which proper discharge was executed by the executor of the estate of Cora B. Rogers, the assignee of the mortgage. The closing title

certificate, dated July 30, 1926, signed by the attorney, stated that search of the records was continued to time of closing the loan and "all liens, incumbrances and defects have been properly eliminated of record and said mortgage is a valid first lien on the premises therein described."

After the Bank loan had been closed and record made of its mortgage (July 30, 1926), it was discovered that there was, duly recorded at the time of his examination of the records but undiscovered by the Bank's attorney, a mortgage of $1,200.00 given by Isaac A. Smith to one Frank Weeks May 31, 1924, and covering, among other parcels, the land included in the Bank mortgage. In the Weeks mortgage no mention was made of the Humphrey mortgage.

Frank Weeks having died, Eugene W. Weeks, his nephew and sole heir, on September 29, 1926, assigned this mortgage to the Pittsfield National Bank, together with other securities totalling $7,700.00 face value, as collateral for a loan of $3,401.97. It must be assumed from the record that the assignee had no notice of the Federal Land Bank claim and had made no examination of the Registry records, which at that time, as will appear from the statement of the facts, showed nothing ahead of the Weeks mortgage.

The contention of the defendants is that the interests of a third party have intervened and that the Federal Land Bank should not be granted subrogation, while the plaintiff claims that subrogation should be granted and extended to give it the right to take up the entire Pittsfield National Bank loan to Weeks and to receive as trustee for him the collateral pledged to secure the loan, accounting to Weeks for any excess after paying the amount properly due to itself. The defendants also contend that the plaintiff should have no relief in equity by reason of negligence in not informing itself of the true state of the Registry record as to mortgages.

While it is not necessary for the disposition of this case, it is not out of place to consider the legal situation, as if it were merely a question of plaintiff's rights against those of the defendant, Eugene W. Weeks, unaffected by rights of the Pittsfield National Bank.

One who, at the request and for the benefit of a mortgagor and on his assurance that there are no other liens or incumbrances

against the land and that the loan will be secured by a first mortgage, furnishes the money to pay off the existing mortgage is not a mere volunteer, the loan having been negotiated for the purpose of paying such mortgage, and he is entitled to subrogation to the rights of the mortgagee whose mortgage is thus paid. *Hughes et al* v. *Callahan* (Ark.), 27 S. W. (2d.), 509; *Hill* v. *Ritchie et al* (Vt.), 98 Atl., 497; *Fifield* v. *Mayer* (N. H.), 104 Atl., 887; *Jackson Trust Co.* v. *Gilkinson et al* (N. J. Ch.), 147 Atl., 113; *Wolff, Applt.* v. *Walter et al*, 56 Mo., 292 (recognizing the principle); *E. Y. Chambers & Co., Inc.* v. *Little et al* (Tex.), 21 S. W. (2d), 17; *James* v. *Martin et al* (S. C.), 147 S. E., 752; *Shaddix et al* v. *National Surety Co.* (Ala.), 128 So., 220.

With the contention of the defendants that failure to have discovered the record of the Weeks mortgage would, of itself and between it and the defendant, Weeks, destroy plaintiff's right of subrogation, the great weight of authority and sound reasoning does not agree.

The Court in the case of *Fifield* v. *Mayer*, supra, says, "The lien holder's equitable rights are not infringed, impaired or in any respect changed by the mere fact that the other party was negligent of his own rights in not discovering the existence of the lien. . . . Equity does not require that the plaintiff (*junior lienor*) should be enriched in consequence of the misplaced confidence of the sureties in the untrue statement of the debtor, or in consequence of neglect to ascertain by independent research that it was untrue."

In the case of *Hill* v. *Ritchie et al*, supra, the Court says, "The doctrine of constructive notice is not applicable; and we think the findings regarding the record do not constitute a defense. An examination of the records would have disclosed the incumbrance, but the question is whether an examination was required by the rule of diligence applicable to the case. This is not a case where the relief of the plaintiff will cause an actual loss to the defendant. Ritchie has not increased his investment since the payment of the lien note, and a reinstatement of the security will simply leave him in his original position. He will lose nothing but the gain which would otherwise have accrued to him from the plaintiff's mistake. . . . Parties who have paid prior liens at the request of the

debtor in ignorance of the existence of subsequent incumbrances have been held entitled to the remedy of subrogation, notwithstanding a failure to examine the records." (This case cites cases from Minnesota, Iowa, Georgia, Illinois, New Jersey Equity, to the same effect, and the cases all bear directly on the point.) To the same effect are, Lawrence on Equity Jurisprudence, Sec. 651; *Jackson Trust Co.* v. *Gilkinson,* supra; 99 Am. St. Rep., note at page 474, et seq; 25 R. C. L., page 1340, Sec. 24; *Hughes Co. et al* v. *Callahan,* supra; *Shields et al* v. *Pepper* (Ala.), 118 So., 549; *Bormann* v. *Hatfield* (Wash.), 164 Pac., 921; *James* v. *Martin et al* (S. C.), supra; *Louisville Joint Stock Land Bank* v. *Bank of Pembroke* (Ky.), 9 S. W. (2d), 113.

In the last cited case the Court states, "It is the general rule that, where a mortgage has been released or satisfied through accident or mistake, it may be restored in equity and given its original priority as a lien, provided the granting of such relief does not operate to the detriment of intervening rights of third persons who may have relied upon the release and who are not chargeable with notice of the mistake or who will not be prejudiced by reinstatement of the lien."

In this same case, the Court says, "But it is argued that the mortgage of appellee was on record and the appellant, being charged with knowledge thereof, could not by reason of its negligence claim subrogation. We have held, however, that the maxim 'The laws assist those who are vigilant, not those who sleep upon their rights,' does not apply to a case of this kind, as any apparent advantage which appellee may have is the result not of its vigilance, but of a mistake on the part of appellant, and a false statement by the mortgagor." (Citing an earlier case in 79 Ky., 598.) The Court then goes on to say, "The negligence of the abstractor did not injure the appellee. It did nothing or paid nothing in reliance on the mistake. By restoring appellant to the position of the City Bank & Trust Company as first lienor, the appellee is not injured, but still has all that it expected to get when it took the second mortgage."

The weight of authority is that in the absence of some prejudice resulting to the junior lienor from the change of owners of the

senior lien the record lien will not defeat the rights of subrogation even though there was constructive notice from the record, and there is no evidence or claim that the plaintiff in the case now under consideration had any actual knowledge of the Weeks mortgage.

From our examination of the record we are therefore of the opinion that the plaintiff would have been entitled to subrogation as between itself and Frank Weeks, had he lived, or his sole heir, Eugene W. Weeks, and for that reason we have referred to the law relating thereto.

The situation in the instant case, however, is one involving the rights of an innocent third party and prevents the operation of a most beneficent doctrine which, as between the original parties, permits, in equity and justice, the placing of a burden where it ought to rest.

Subrogation, itself a creature of equity, must be enforced with due regard for the rights, legal or equitable, of others. It should not be invoked so as to work injustice, or defeat a legal right, or to overthrow a superior or perhaps an equal equity, or to displace an intervening right or title. *Makeel* v. *Hotchkiss*, 190 Ill., 311, 83 Am. St. Rep., 131; *Rand* v. *Cutler et al*, 155 Mass., 451; see note at page 480, 99 Am. St. Rep.; *Williams* v. *Libby*, 118 Me., at page 83.

Nor can the right of subrogation prevail against bona fide purchasers or those who occupy like position. *Richard* v. *Griffith*, 92 Cal., 493, 27 Am. St. Rep., 156; *Amick* v. *Woodworth et al* (Ohio), 50 N. E., 437; *Gray et al* v. *Jacobsen et al*, 13 Fed. (2d), 959; *Waltham Coöperative Co.* v. *Barry et als*, 231 Mass., 270; *Northwestern Trust Co.* v. *Consolidated Elevator Co.* (Minn.), 171 N. W., 268; *Pabst et al* v. *Wigginton* (Ky.), 281 S. W., 834; *Hargis et al* v. *Robinson et al* (Kan.), 66 Pac., 988.

From the record before us, we find the rights of the Pittsfield National Bank to be those of a bona fide purchaser.

The entry will therefore be,

*Appeal dismissed.*
*Decree below affirmed.*