## MAHONING INV. CO. v. CENTRAL HANOVER BANK & TRUST CO. et al.

District Court, S. D. New York.
Dec. 11, 1939.

Curtis, Mallet-Prevost, Colt & Mosle, of New York City (Hugo Kohlmann, Eugene W. Goodwillie, and Dudley B. Bonsal, all of New York City, of counsel), for plaintiff.

Larkin, Rathbone & Perry, of New York City, for defendant Central Hanover Bank & Trust Co., as trustee under consolidated mortgage of Buffalo, Rochester & Pittsburgh Railway Co.

Cravath, de Gersdorff, Swaine & Wood, of New York City (Leonard D. Adkins, and Littleton Groom, both of New York City, of counsel), for defendant Buffalo, Rochester & Pittsburgh Ry. Co.

GALSTON, District Judge.

Plaintiff seeks to recover 82,524 shares of the Class A common stock of the Rochester & Pittsburgh Coal Company, and 200 shares of the capital stock of the J. & C. Corporation from the defendant, Central Hanover Bank & Trust Company, as successor trustee in the indenture designated as the general mortgage of the defendant, Buffalo, Rochester & Pittsburgh Railway Company. The material facts are not in dispute.

On September 1, 1887 the Railway Company executed and delivered to Union Trust Company a mortgage covering its railroad properties to secure an issue of general mortgage bonds. The Central Hanover Bank & Trust Company is the successor trustee under that mortgage.

To secure the issuance of additional general mortgage bonds the Railway Company,

being the owner of all of the stock of the Coal Company, by instrument dated April 21, 1890, pledged the stock with the trustee and provided that it be held upon the same trusts and for the same purposes as those declared in the general mortgage.

In 1906 the Hepburn Act was enacted, 34 Stat. 584, 585, wherein it was provided: "It shall be unlawful for any railroad company to transport * * * any article or commodity * * * mined * * * by it * * * which it may own in whole or in part." Title 49 U.S.C. § 1, subdivision 8, 49 U.S.C.A. § 1(8).

To comply with these provisions the Railway Company divested itself of its remaining interest in the Coal Company stock. The process set up was necessarily involved since the stock itself had been pledged under the supplemental agreement to the general mortgage. The means consisted in the organization by the Railway Company of the plaintiff company and the transfer to that company, on December 13, 1906, of all of its right, title and interest in and to the shares of the capital stock of the Coal Company, subject, of course, to the lien of the general mortgage of the Railway Company as defined in the supplemental agreement of April 21, 1890. In consideration therefor the Railway Company received 41,250 shares of the capital stock of the plaintiff company, being all of the stock of that company. Then on December 27, 1906, the Railway Company distributed as a dividend to its stockholders the stock of the plaintiff company.

The general mortgage bonds matured on September 1, 1937. Those bonds, as has been stated, were secured by the railroad properties and by the pledged Coal Company stock. By reason of stock dividends and exchanges on reorganization since 1890, the pledged stock, on September 1, 1937, consisted of 82,524 shares of Class A common stock of the Coal Company, and 200 shares of the capital stock of the J. & C. Corporation. At the time of maturity the aggregate face value of the outstanding general mortgage bonds was $4,427,000. The holders of these bonds presented them to the trustee and received in payment principal with interest to the date of maturity.

The plaintiff now claims the pledged stock contending that the general mortgage having matured and the bondholders having received their money, the trustee no longer has any title therein.

The issue herein arises from the execution by the Railway Company of its consolidated mortgage on May 1st, 1907. The defendants point out that in anticipation of the maturity on September 1, 1937 of the principal amount of the general mortgage bonds, the Railway Company undertook to sell to the Baltimore & Ohio Railroad Company, with which company it was affiliated, $5,183,000 principal amount of its consolidated mortgage bonds at 85.4% of par, the proceeds from the sale to be used to meet the maturity of the General Mortgage bonds. The Baltimore & Ohio Railroad Company, on September 1, 1937, obtained the funds from the Reconstruction Finance Corporation with which to purchase those consolidated mortgage bonds. The check of the Reconstruction Finance Corporation in the amount of $4,427,000, payable to the order of the Baltimore & Ohio Railroad Company, was endorsed by that company to the order of the Railway Company. The Railway Company in turn endorsed the check to the Central Hanover as trustee of the consolidated mortgage, against the authentication and delivery to the Baltimore & Ohio Railroad Company of $4,427,000 principal amount of the consolidated mortgage bonds, $756,000 principal amount of such bonds having prior thereto been authenticated and delivered by the trustee. The consolidated mortgage bonds in the principal sum of $5,183,000 were thereupon delivered by the Baltimore & Ohio Railroad Company to the Reconstruction Finance Corporation as security for the aforesaid loan. The Railway Company had been required by the trustee to furnish the Central Hanover, as such trustee, with a certificate which stated among other matters that it was the intention of the Railway Company to purchase the outstanding general mortgage bonds, and that it would deposit with Central Hanover in uncanceled form all general mortgage bonds so purchased. The trustee contends that pursuant to this arrangement all of the outstanding mortgage bonds were thereafter purchased by the Baltimore & Ohio Railroad Company as agent of the Railway Company and deposited in uncanceled form with the Central Hanover as trustee under the consolidated mortgage. No transfer stamps were affixed to the bonds so purchased and deposited, and there was stamped on each deposited bond the endorsement "Not negotiable. Held by Central Hanover Bank and Trust Company, as Trustee, under the Consolidated

Mortgage of Buffalo, Rochester & Pittsburgh Railway Company, dated May 1, 1907."

The Railway Company asserts that it is but a nominal party to the suit and takes no position as to the construction of its consolidated mortgage. It states its willingness to rely upon whatever decision the court may see fit to make in the premises. The Central Hanover Bank & Trust Company, however, contends that the plaintiff has failed to make out a case requiring delivery of the pledged stock on the ground that the general mortgage bonds were purchased and not paid, and that in consequence the lien of the general mortgage still attaches; and that in the alternative, as trustee of the consolidated mortgage, it made advances for the acquisition of the general mortgage bonds and is by subrogation entitled to be vested with the rights of the general mortgage bondholders. The trustee also contends that the plaintiff gave nothing for what it got, has no real intervening equity, and that 91% of its stockholders owning more than 99% of its stock approved the Railway's agreement with the consolidated mortgage trustee.

The indenture of September 1, 1887 provides that the railroad company will pay and discharge every underlying bond and car trust certificate until payment of which $6,000,000 of the bonds hereby secured are reserved, and provides that:

"Upon payment of the several sums by the first party (i. e. the Railway Company) all and singular, the property mentioned and described in this instrument shall revert to the first party, free and discharged from all lien or encumbrance hereby without the execution by the second party of any instrument whatever.

"Nevertheless, in such case, the second party will, upon a reasonable demand by the first party, execute and deliver to the first party all such reasonable releases, receipts and acquittances as may be appropriate in the circumstances."

Nowhere in the general mortgage does it appear expressly or by implication that any other lien save that of the general mortgage itself was thereby created. The instrument of April 21, 1890, pursuant to which 1,250 of the mortgage bonds described in article third of the mortgage were reserved for the purpose of constructing a certain railroad between Clarion Junction and Howard Junction in the State of Pennsylvania, provided for the pledge of the additional security of the Coal Company stock upon the same trusts and for the same purposes as are set forth in the general mortgage.

Thus in this supplemental agreement it appears that the only lien contemplated against the Coal Company stock was the lien of the general mortgage. So too the sale of the stock by the Railway Company to the plaintiff was subject only to the lien of the general mortgage.

Moreover it should be observed that in the agreement of February 21, 1890 it is provided that the trustee shall vote the pledged stock as requested by the Railway Company. Accordingly in the agreement of December 13, 1906 between the Railway Company and the plaintiff, the Railway Company transferred all voting power and all rights to any dividends to the plaintiff, the Mahoning Company. A duplicate original of the assignment, with transfer stamps affixed in the amount of $799.90, was filed with the general mortgage trustee.

Since equity continues to look to substance rather than form, it is, of course, idle for the defendant trustee to disclaim notice of that assignment. The distinction sought to be made is unrealistic and arbitrary, but doubtless inspired by a punctilious sense of its obligation to protect the holders of the consolidated mortgage bonds. Though it may be observed in passing that with the senior lien satisfied the position of the consolidated mortgage bondholders has been not impaired but improved.

The defendant trustee also contends that this was not a bona-fide purchase for value by Mahoning. The reason for the sale and something of the history in connection therewith, is summarized in a letter from the Rochester & Pittsburgh Coal Company, dated December 29, 1936, to the vice president of the Baltimore & Ohio Railroad Company. It is therein stated:

"Since the stock of the latter (i. e. the Coal Company) was then pledged under the Railway's General Mortgage, it could not be sold, distributed as a dividend, or otherwise disposed of.

\*　　\*　　\*　　\*　　\*　　\*

"The stock of the Mahoning Investment Company so received by the railroad company was thereupon on December 27, 1906 distributed to the stockholders of the railroad company as a dividend. Although the stock of the Coal Company could not be directly distributed as a dividend to the

stockholders of the railroad company, because it was pledged under the General Mortgage, in effect, the equity of redemption in this stock was so distributed by the formation of the plaintiff, Mahoning, the transfer of the equity to it, and the distribution of the Mahoning stock to the stockholders of the railway."

■ If countenance were indeed given to the position taken by the trustee that the action by the Railway Company in December 1906 was merely colorable, it would be tantamount to asserting that the Railway Company had not in point of fact complied with the requirements of the Hepburn Act, Title 49 U.S.C., § 1, subdivision 8, 49 U.S.C.A. § 1(8). That is an unwarranted position for the presumption must be that the Railway Company made an honest effort to comply with the law and in fact did so. Thus it parted with all right, title and interest in and to the stock and any control therein, and such interest and control passed to the plaintiff herein.

■ No subsequent act of the Railway Company, without the consent of the plaintiff, could have rendered the assignment nugatory. So that when on May 1, 1907 the Railway Company executed and delivered to the Central Hanover Bank & Trust Company of New York, as trustee, its consolidated mortgage to secure its consolidated mortgage bonds, no provision therein could impair the rights of the Mahoning Investment Company, which was not a party to the instrument. That at the time of the execution of the consolidated mortgage a very large proportion of the stockholders of the Mahoning Investment Company were also stockholders of the Railway Company cannot compel the inference that the stockholders of the plaintiff company in effect approved and adopted the consolidated mortgage indenture as to form and substance.

■ Again the trustee contends that it is entitled to hold the pledged stock as long as the general mortgage bonds are outstanding and unpaid, and it asserts that those bonds are outstanding and are unpaid, and that no provision for the payment thereof has been made. The proof discloses that the holders of the general mortgage bonds presented them for payment at the office of the Railway Company and that upon presentation and surrender they received checks of the Baltimore & Ohio Railroad Company, acting as the fiscal agent of the Railway Company, for the face amount of the bonds with interest to September 1, 1937, the maturity date. Thus the general mortgage bonds passed to the Railway Company, from which company they had emanated, and which was obligated to make payment therefor. The certificate which the consolidated mortgage trustee required the Railway Company to execute cannot change the fact that the Railway Company, the debtor, furnished its own funds to take up its own obligations. The situation is not changed because the funds were obtained by the Baltimore & Ohio Railroad Company in accordance with its obligation of December 15, 1931 to advance loans sufficient to meet the number of maturing obligations of the Railway Company. Certainly it was not the money of the trustee of the consolidated mortgage which was furnished. Its sole act in effect was to certify bonds, which by nature of its trusteeship it was obligated to do.

As against the certificate executed by the Railway Company at the insistence of the trustee of the consolidated mortgage, which is the only proof of express intention to keep the general mortgage bonds alive, there is evidence which must be interpreted the other way. No documentary stamps were affixed to the bonds presented by the holders to the Railway Company; the Railway Company's report to the Securities and Exchange Commission, dated October 8, 1937, contains a reference to $114,000 of general mortgage bonds outstanding October 4, 1937, with the statement that they "will be paid on presentation"; in the statement made by the Railway Company to the New York Stock Exchange, December 17, 1937, and in the application to the Securities and Exchange Commission, January 17, 1938, it is recited: "Funds for the satisfaction of said General Mortgage bonds are on deposit with the trustee and under said General Mortgage."

The annual report to the Interstate Commerce Commission filed by the lessors of the Baltimore and Ohio Railroad Company which includes the Railway Company, for the year ended December 31, 1937, under the title "Funded Debt Matured Unpaid" recites, concerning the general mortgage of the Buffalo, Rochester & Pittsburgh Railway Company, $60,000 as the amount outstanding at close of year, and the reason given for non-payment "Not presented." It is significant that though the Railway Company's balance sheet for the year 1936

shows the general mortgage bonds as a liability as at December 31, 1936, it does not show them as outstanding on December 31, 1937. Consideration also must be given to the letter dated April 14, 1937 as an admission by the Railway Company "that on the payment of the bonds (i. e., the General Mortgage bonds) the Mahoning Investment Company is entitled to receive the Coal Company stock held as collateral and that the Railroad Company, under its Consolidated Mortgage, has assumed no obligation with respect to this stock." It is interesting also to find in this same letter the use of the term "retirement" in connection with the maturity of the general mortgage bonds. Such terminology too is consistent with the statement in the letter of August 6, 1937 from the general solicitor of the Railway Company to the trustee under the consolidated mortgage, wherein he writes: "There are now outstanding $4,427,000. of said General Mortgage bonds and said Railway Company desires to have $4,427,000. of Consolidated Mortgage bonds issued to retire said General Mortgage bonds."

Again in the same letter of counsel we find: "The Buffalo, Rochester & Pittsburgh Railway Company proposes to deposit with you $4,427,000. on or before September 1, 1937 to be applied to the payment of said General Mortgage bonds * * *"

 From the foregoing proof, the inference must be drawn that the general mortgage bonds are held by the defendant trustee as wholly inert.

Nor is the consolidated mortgage trustee entitled by way of subrogation to any rights in the Coal Company stock.

The obligation to make payment of the bonds was that of the Railway Company. These funds were obtained not from the trustee but from its fiscal agent, the Baltimore & Ohio Railroad Company, which company had borrowed the money from the Reconstruction Finance Corporation. The consolidated mortgage trustee made no payment and was under no obligation to make any payment—indeed had no right to make any payment for the purpose of general mortgage bonds. It is difficult to see any basis on which it can assert the right to subrogation. Moreover the evidence shows that the Railway properties covered by the general mortgage at the time of the maturity on September 1, 1937 were worth substantially more than the amount of the general mortgage. With recourse, therefore, to the primary security, there would have been sufficient to free the Coal Company stock for the benefit of the plaintiff. If the doctrine of subrogation asserted by the defendant trustee were tenable, conceivably the plaintiff's stock could be held not merely pending the maturity of the consolidated mortgage, but ad infinitum; subrogation, however, does not lie. American Surety Co. v. Lewis State Bank, 5 Cir., 58 F.2d 559; Escanaba Traction Co. v. Burns et al., 6 Cir., 257 F. 898; 5 Pomeroy, Equity Jurisprudence, 2nd Ed., Sec. 2350; Federal Land Bank v. Smith, 129 Me. 233, 151 A. 420; Lloyd v. Galbraith, 32 Pa. 103.

The plaintiff may have a decree directing the general mortgage trustee to deliver the pledged stock to the plaintiff.

Submit findings of fact and conclusions of law to conform with the foregoing opinion.